RALPH J. ATWELL v. CITY OF MIDDLETOWN ET AL.

COURT OF COMMON PLEAS    MIDDLESEX COUNTY    FILE No. 999

Memorandum filed November 22, 1949

*Bernard A. Kosicki,* of Middletown and *Harrison D. Scho-field,* of Hartford, for the Plaintiff.

*Day, Berry & Howard,* of Hartford, for the Defendants.

FITZGERALD, J.  On the late afternoon of May 14, 1949, a Cadillac sedan owned by the plaintiff and operated by one Stueck came into collision with a Buick sedan owned by the defendant city of Middletown and operated by the defendant Dunn, its fire chief.  The collision occurred within the limits of the intersection of Matthews and Hill Streets in the city of Bristol.  In this action the plaintiff is seeking to recover damages of both defendants for the almost total destruction of his car. Other actions by the occupants of the cars for personal injuries are either pending in the Superior Court or about to be insti- tuted.  An additional action in which the defendant city is seeking to recover damages for the similar destruction of its car is pending in this court.  The trial of this action, therefore, is serving the purpose of determining the proximate cause of the collision.  It may also affect certain phases of the question of liability common to all of the actions growing out of the colli- sion.  In passing it is noted at this time that the defendants' car bore an inscription in letterings related to the fire department of the city of Middletown and the office of chief.

The collision in litigation has a social background which enters into certain aspects of the problem presented.  It appears that the plaintiff's grandson, Stanley Atwell, Jr., was to be married in a church in Bristol at 2 o'clock on the Saturday afternoon in question and that a reception was to follow at a country club on the outskirts of that city; that the plaintiff suggested to his grandson that he use the car on that day as a matter of convenience; and that the grandson accepted the suggestion and permitted Stueck, his friend and best man at the wedding, to operate it in his presence.  The younger Atwell was not a member of his grandfather's household in Middletown and had no authority to use the car unless he obtained special

permission to do so. At the trial the defendants conceded that the doctrine of the family automobile has no application to the case and that their specially pleaded negligence of Stueck, if such be found, is not chargeable to the plaintiff.

It also appears that the defendant Dunn, chief of the fire department of the defendant city, and Mrs. Dunn were invited guests to the wedding ceremony and to the reception following the wedding. The disastrous collision occurred after the reception and while the Dunns were returning to Middletown and the bride and groom together with Stueck and his fiancee were en route to Terryville in the plaintiff's car to pick up the groom's car to be used by the newly married couple on their wedding trip.

Prior to the collision the plaintiff's car, with Stueck operating, was proceeding east on Matthews Street and the defendants' car south on Hill Street. Had both cars arrived at the intersection at approximately the same time, the plaintiff's car would have been to the right of the defendant's car. Matthews Street, immediately west of the intersection, is twenty-two feet wide. Hill street, immediately north of the intersection, is twenty-nine feet wide. The southwest corner has a considerable curve which, in conjunction with the fact that the continuation of Matthews Street east of the intersection is not in a direct line with that portion of the highway west thereof, makes the determination of the center of the intersection somewhat difficult. It appears that the southerly line of Matthews Street east of the intersection is about fifteen feet north of the southerly line of that highway west of the intersection. In any event the ground area located off of the northwest corner is a broad expanse of unoccupied land and operators approaching the intersection as were these operators would be afforded a generous view of traffic approaching the intersection from the directions of the cars here involved. This view was available to each operator regarding the other for at least 250 feet before the intersection. At the time in question no stop sign or other traffic control was in existence.

Neither the operator of the plaintiff's car nor any of the occupants therein saw the defendants' car before the collision. They were not familiar with the road and did not realize that there was an intersection of highways. So also the defendant Dunn did not see the plaintiff's car before the collision. He did know, however, of the intersection. Mrs. Dunn became

aware of the presence of the plaintiff's car approaching on her right just before the impact. While her testimony was to the effect that the car in which she was a passenger had nearly passed through the intersection when she became aware of the presence of the other car, this testimony is of little value. It is found that the front of the defendants' car ran into the forward left side of the plaintiff's car. It is further found that the impact occurred substantially in the southwest quadrant of the intersection. What remained of both cars came to rest beyond the southeast corner, with the right side of the plaintiff's car crushed against a tree. The collision occurred about 5 o'clock in the afternoon, daylight saving time. While it was raining at the time, it cannot be found that this was a contributing factor in causing the collision.

The only conclusion that can be validly reached in view of the foregoing recital is that both operators were materially negligent in various respects. It is not necessary to consider specifically the statutory provision of the right of way at intersections (General Statutes § 2489) and its place in the case. The foregoing conclusion is based on findings of common-law negligence: failure to keep a proper lookout; absence of warning; want of proper control.

The evidence would support a finding of violation of the speeding statute (§ 2407) by both operators. The photographs in evidence of what remains of the cars reveal that the impact between the 4300-pound Cadillac and the 3800-pound Buick was terrific. Mrs. Dunn was hurled out of the car in which she was a passenger for a distance of seventy-five feet; two passengers were hurled out of the other car, and a third therein had to be extricated from the wreckage by the use of crow bars. That no one was killed is indeed a miracle. One of the passengers in the plaintiff's car, to cite but a single instance, was hospitalized for seventy-one days.

As already stated, the negligence of Stueck in any event cannot be charged to the plaintiff as Stueck was not operating as his agent or employee. The remaining question in the case is whether the plaintiff is entitled to judgment against both defendants or only against the defendant Dunn as operator. The complaint alleges that at the time of the collision Dunn was operating "as Chief of the Fire Department of said City of Middletown, and as agent, servant and employee of said City of Middletown, authorized to operate said automobile at said time and place."

At the commencement of the trial the court called the attention of counsel to the question of governmental immunity on the part of the defendant city and the absence of any interposed defense in connection therewith, citing *Lambert* v. *New Haven*, 129 Conn. 647, 649, to which *Adams* v. *New Haven*, 131 Conn. 552, 556, could have been added. It is the feeling of the presiding judge that the trial court is under a duty to give effect to this defense in a negligence action against a governmental defendant even if it is not raised by the pleadings and even if such defendant refuses to raise it when attention is called to its absence. See *Young* v. *Stamford*, 15 Conn. Sup. 442, 443. Counsel have urged the court not to adopt such course, and the court reluctantly agreed. Since the defendant city is to be relieved of liability under the judgment in view of certain legal phases hereinafter considered, governmental immunity and its place in the case becomes academic.

Called as a witness by the plaintiff, Chief Dunn testified that he considers himself on duty twenty-four hours a day; that the car owned by the defendant city was turned over to him for his use; that the upkeep and maintenance of the car were paid for by the defendant city; that it was kept in his own garage when he was at home; and that on the afternoon of the collision a deputy was in charge of the affairs of the fire department.

In determining whether or not the defendant Dunn was operating the car of the defendant city at the time of the collision in the capacity of its agent or employee so as to charge his negligence to the latter, two standard principles of law require consideration: (1) An employer is not liable for injuries or damage caused by the negligent operation of his car while it is being used by an employee for his own business or pleasure, even though the employer has consented to such use. *Whiteman* v. *Al's Tire & Service Garage, Inc.*, 115 Conn. 379, 382; *Mastrilli* v. *Herz*, 100 Conn. 702, 704. (2) If the employee is found to have been, at the time of the mishap, returning to his normal duties after a permissive deviation or departure therefrom, his negligence is then chargeable to the employer on the theory that he had become again engaged in the employer's business within the scope of his employment. *Neville* v. *Adorno*, 123 Conn. 395, 401; *Mastrilli* v. *Herz*, supra, 706.

There is no evidence before the court that the defendant city gave its consent to the defendant Dunn to use its car to attend the wedding and reception in Bristol. Hence the fact

that the collision occurred while Dunn was returning to Middletown does not create liability on the part of the defendant city for his negligence under either of the foregoing principles of law, the second of which is an enlargement of the first. The defendant Dunn and his wife were clearly engaged upon a venture of social pleasure of their own, in no way connected with his duties as fire chief. Consequently, the defendant city is relieved from any judgment against it in a negligence action growing out of that venture personal to the Dunns. The negligence of the defendant Dunn cannot be charged to the defendant city on the facts and on the law.

The plaintiff's car had a market value of $1500 before the collision and a salvage value thereafter of $200. Damages are set at $1300 with interest thereon of 6 per cent from May 14, 1949, to date, amounting to approximately $40.

Accordingly, judgment may enter for the plaintiff to recover of the defendant Dunn damages in the amount of $1340; and in favor of the defendant city of Middletown for reasons stated.