EMMA MITCHELL *v.* ESSIE RESTO

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

Argued November 5—decided December 10, 1968

*Tobias Weiss,* for the appellant (plaintiff).

*Gregory C. Willis,* with whom, on the brief, was *Edward J. Holahan, Jr.,* for the appellee (defendant).

KING, C. J. The defendant, Essie Resto, owned an automobile which she made available for the use of her nephew, Theodore Ingram, and his wife, Essie. On the evening of February 7, 1960, allegedly as a result of the negligence of Essie Ingram in

operating the defendant's automobile, the plaintiff, Emma Mitchell, was injured. The plaintiff brought suit against the defendant, claiming that at the time of the accident Essie Ingram was acting as the agent of the defendant and that the defendant was responsible for the plaintiff's damages under the rule of respondeat superior.

The court directed a verdict in favor of the defendant on the theory that the plaintiff failed to establish an actionable agency relationship, that is, an agency relationship sufficient to impose liability under modern respondeat superior concepts or under any other theory of agency. The plaintiff assigns error in the direction of the verdict and in certain exclusionary evidential rulings.

The plaintiff correctly makes no claim that the family car statute (General Statutes § 52-182), which creates a rebuttable presumption of authority of the operator under the family car doctrine, was applicable, since the relationship between the defendant-owner and the operator fell into none of the relationships enumerated in the statute. She also correctly makes no claim under our common-law family car doctrine since the operator was not a member of the owner's household. See cases such as *Smart* v. *Bissonette,* 106 Conn. 447, 452, 138 A. 365. Rather, the plaintiff relies entirely on general, common-law principles of agency and, perhaps more specifically, on the common-law doctrine of respondeat superior.

The plaintiff was impeded in her proof of her claims of agency by certain exclusionary evidential rulings of the trial court. These rulings, however, which excluded evidence of the defendant's reasons for lending the car, were not reversible error because they were clearly harmless even though er-

roneous. That the exclusionary rulings were harmless is apparent from the finding in which the rulings are set forth, together with the offers of proof which the plaintiff made. For reasons hereinafter stated, even had the excluded evidence been admitted, it would not have tended to prove facts on which an actionable agency could have been predicated.

We come then to the court's action in directing a verdict. If we take the plaintiff's evidence and offers of proof most strongly in her favor, they included the following: The defendant was a widow who had no children and was living alone in New Rochelle, New York. She felt toward her nephew as she would have toward a son and was greatly interested in his welfare. He and his wife, who also lived in New Rochelle, but not with the defendant, were having marital difficulties. The defendant thought that she could help preserve the marriage by providing Theodore and his wife with a car for their social and other personal uses. Indeed, the car was being used for their own social purposes at the time of the accident. On the basis of these claims of fact, the plaintiff contends that the Ingrams at the time in question were furthering the interests of the defendant so as to impose liability on her under the doctrine of respondeat superior.

But even if we accept as true the plaintiff's claim that the defendant's interests in a sense were promoted by the loan of her car to her nephew and his wife, it would be only in the way in which, in many cases of a gratuitous loan of a car, the person lending it is emotionally benefited by a feeling of generosity or satisfaction on his part and a hope and expectation of appreciation and good will on the part of the borrower. Indeed, it is unlikely that

anyone would gratuitously lend an automobile to a person in whose welfare he had no interest. The plaintiff's argument amounts to a claim that, in any case where the operator has been gratuitously loaned an automobile by the owner and is operating it solely for the operator's own purposes, it is at least a question of fact whether he is then acting as the agent of that owner.

The underlying rationale of the modern doctrine of respondeat superior in its application to this type of case is that "every man who prefers to manage his affairs through others, remains bound to so manage them that third persons are not injured by any breach of legal duty on the part of such others while they are engaged upon his business and within the scope of their authority." *Wolf* v. *Sulik*, 93 Conn. 431, 436, 106 A. 443; *Durso* v. *A. D. Cozzolino, Inc.*, 128 Conn. 24, 27, 20 A.2d 392. But it must be the affairs of the principal, and not solely the affairs of the agent, which are being furthered in order for the doctrine to apply. That, as claimed by the plaintiff in the instant case, some incidental emotional benefit may be realized by the owner of the car is not a sufficient basis on which to predicate an actionable agency relationship. *Whiteman* v. *Al's Tire & Service Garage, Inc.*, 115 Conn. 379, 383, 161 A. 519.

In the *Whiteman* case, the court rejected an argument very similar to that made in the present case. The trial judge had directed a verdict in favor of the defendant-owner on the ground that no agency had been established. The plaintiff's evidence was that the automobile owner, Al's Tire and Service Garage, Inc., occasionally lent an automobile to its employees in order to improve their spirit so that they would feel more disposed to work overtime

when requested. It was for precisely that purpose that the defendant's manager lent the car to an employee who wished to use it to drive his wife and child to the next town. On his way, he became involved in an accident. The plaintiff claimed that at the time of the accident the employee's business had become the business of the employer, who was benefiting by lending the car for just these uses. In upholding the ruling of the trial judge, this court observed that "whenever an automobile is loaned by one person to be used by another, it is reasonable to suppose that the person loaning the same expects that the favor will be appreciated; or, as it is stated in *Stenzler* v. *Standard Gas Light Co.*, 179 App. Div. 774, 776, 167 N.Y. Sup. 282, 284, affirmed 226 N.Y. 681, 123 N.E. 891: 'An owner who gratuitously loans his car to a servant . . . for such person's [servant's] own particular pleasure, presumably has interest in the pleasure and, inferentially, in the good health and spirits of such other person. And yet it cannot be doubted that such particular pleasure is not thereby made the employer's business in any legitimate sense of the words. The test of the employer's liability is such employer's business as distinguished from the employee's business or pleasure in using the car.'" *Whiteman* v. *Al's Tire & Service Garage, Inc.*, supra; *Amento* v. *Mortensen*, 130 Conn. 682, 686, 37 A.2d 231; *Koops* v. *Gregg*, 130 Conn. 185, 191, 32 A.2d 653; *Slattery* v. *O'Meara*, 120 Conn. 465, 470, 181 A. 610.

Since the operator was not the owner of the car, our so-called agency statute, § 52-183, did apply. *Scalora* v. *Shaughnessy*, 151 Conn. 252, 257, 196 A.2d 763. The plaintiff chose, however, to introduce her evidence of agency in her case in chief instead of

awaiting the introduction, by the defendant, of proof of the explanatory facts as to the use being made of the car at the time in question under the rule of cases such as *Leitzes* v. *F. L. Caulkins Auto Co.*, 123 Conn. 459, 462, 196 A. 145, and *Koops* v. *Gregg*, supra, 187. The plaintiff's proof of the claimed agency in her case in chief was a permissible course for her to pursue. *Skut* v. *Boardman*, 137 Conn. 675, 678, 81 A.2d 110. Actually, the defendant failed to produce any evidence of any such explanatory facts.

Although in this situation the agency statute would ordinarily preclude the direction of a verdict for the defendant on the basis of the plaintiff's failure to establish agency, in this particular case there was no material error in the direction of the verdict. This is because, as previously pointed out, the plaintiff was so persistent and meticulous in her claims for the introduction of the excluded evidence that in effect they amounted to complete offers of proof of the evidence on which she hoped to establish the requisite agency relationship. Furthermore, these offers of proof were reiterated in her brief.

If we construe these offers of proof most strongly in her favor, the plaintiff could not, for the reasons hereinbefore set forth, have proven an actionable agency relationship. Thus, there could have been no harmful error in the direction of the verdict, and a new trial for the technical procedural inaccuracy in the direction of the verdict, or for the erroneous exclusionary evidential rulings, would be unwarranted. On the plaintiff's own claims, there was, and could be, no actionable agency.

There is no error.

In this opinion the other judges concurred.